[Cite as *Allen v. Rankin*, 2013-Ohio-456.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

SUSAN M. ALLEN, ET AL.,     :
      :
    Plaintiffs-Appellants,    :  Case No.  12CA10
      :
    vs.    :
      :
JOHN A. RANKIN, DBA    :  <u>DECISION AND JUDGMENT</u>
TUSCAN TABLE RESTAURANT,  :  <u>ENTRY</u>
ET AL.,    :
      :
    Defendants-Appellees.  :  **Released: 01/29/13**
_____

APPEARANCES:

Roy H. Huffer, Huffer & Huffer Co., L.P.A., Circleville, Ohio, for
Appellants.

Carl A. Aveni, CARLILE PATCHEN & MURPHY LLP, Columbus, Ohio,
for  Appellee John A. Rankin, dba Tuscan Table Restaurant and Rankin
Enterprises, LLC, Mark H. Gams, GALLAGHER, GAMS, PRYOR,
TALLAN & LITTRELL L.L.P., Columbus, Ohio, for Appellee Melanio D.
Acosta, Ofelia C. Ocasta and Ocasta Properties, LLC, and Michael J.
Valentine and Paul N. Garinger, Columbus, Ohio, for Appellee City of
Circleville.
_____

McFarland, P.J.:

{¶1} Susan and Roderick Allen appeal the judgment of the Ross

County Court of Common Pleas, granting summary judgment to Defendant-

Appellees John Rankin dba Tuscan Table Restaurant and Rankin

Enterprises, LLC, Defendant- Appellees Melanio D. Acosta and Ofelia C.

Acosta and Acosta Properties, LLC, and Defendant-Appellee City of Circleville. Having reviewed the record and the pertinent law, we affirm.

FACTS

{¶2} Appellant Susan M. Allen fell on a sidewalk in the City of Circleville on December 10, 2008. The sidewalk abutted 122 North Court Street, which was property owned by Acosta Properties LLC. John Rankin dba Tuscan Table Restaurant leased 122 North Court Street from the Acostas. The restaurant and a bank called the Savings Bank were both located on the same side of North Court Street.

{¶3} On the incident date, Appellant and her son had eaten lunch at Wendys, and she asked him to take her to the bank. She had no intention of entering the Tuscan Table Restaurant, although she had eaten there on previous occasions. Appellant's son parallel-parked on Court Street. Appellant testified on the date of the fall, she got out of her son's pickup truck on the passenger side and headed southbound toward the Savings Bank.

{¶4} As Appellant walked towards the bank, she encountered a street sign, a lamp post, and a tree with a metal grate around the base. When she fell, she was angled from the tree and her head was toward the front entrance of the Tuscan Table. Appellant broke her right wrist.

{¶5} Appellant denied problems seeing or any distractions as she walked.  It was a cloudy day, but there was no ice or snow.  She testified she had no problems with the lighting conditions.  Before she fell, she was looking straight ahead, not looking down.

{¶6} In deposition, Appellant could not say whether she tripped over the grate or the raised portion of the sidewalk. She testified to the height of the raised portion of the sidewalk in contradictory terms.  She first testified the raised concrete was "two inches or more."  Then she said it "Might have been an inch and three-fourths.  I don't know."  She further testified "I would say it is an inch and three-fourths or more than two." Appellant went back a few weeks later and saw no changes to the area or the condition of the sidewalk.  This time, she was either inside or standing next to a parked car and could see the raised concrete from some distance.

{¶7} Appellant Susan Allen later supplemented her deposition testimony with a sworn affidavit.  She testified that she was distracted by the street lamp post, the sign post, and the tree.   Specifically she stated in her affidavit that when she exited the truck passenger door, she was immediately confronted with the lamppost which prevented her from leaving the two-foot wide brick area abutting the curb in order to get to the wider area of the concrete sidewalk.   After three to four feet, she still could not get inward to the sidewalk because she was obstructed by the sign post.  After another four

to five feet, she encountered the grate around the tree and then moved inward to the sidewalk. Appellant also noted in her affidavit that she was unable to detect a gradual incline in the concrete when the color and material all looked the same from above.

{¶8} Appellant Roderick Allen also testified in deposition that he was not sure what his wife tripped over, whether it was the concrete sidewalk or the grate. He testified he and his son went to measure the concrete sidewalk approximately 30 days after the fall. As far as he could tell, nothing had been altered or changed. In his opinion, the concrete was heaved up and his wife stepped into a space where she thought there was concrete but it was just a gap, east of the tree. He measured a line of raised concrete running north and south. He testified the concrete was two inches or less where he measured.

{¶9} Roderick Allen also supplemented his deposition testimony with a sworn affidavit. Essentially, Appellant stated that when he testified "two inches or less" in deposition, he thought the questioning attorney was referring to the other raised areas of the sidewalk.

{¶10} Appellants' Allen filed a complaint in negligence against John A. Rankin dba Tuscan Table Restaurant, Rankin Enterprises LLC, Tuscan Table LLC, (hereinafter to be collectively referred to as "Rankin"), Melanio D. Acosta, Ofelia C. Acosta, and Acosta Properties LLC, (hereinafter to be

collectively referred to as "Acostas"), and the City of Circleville, (hereinafter "the City"),  on December 7, 2010. [1] Appellant Susan Allen alleged permanent personal injuries, medical expenses past and future, and pain and suffering.  Appellant Roderick Allen alleged loss of consortium and payment of medical expenses on behalf of his wife.

{¶11} In the complaint, Appellants did not allege either Rankin, Acostas, or the City owned the sidewalk where the fall occurred.  Appellants did not allege willful and wanton conduct on the part of the defendants. Further Appellants did not allege that there was a violation of any city ordinance.

{¶12} All Defendants- Appellees filed timely answers and discovery ensued.  Eventually, all defendants filed motions for summary judgment. [2] Defendant-Appellee City of Circleville contended it was entitled to sovereign immunity and argued in the alternative: (1) the condition of the concrete sidewalk was open and obvious; (2) it was not liable for minor imperfections of two inches or less; and (3) there was no evidence of attendant circumstances. Plaintiffs-Appellants filed a memorandum contra defendant City of Circleville's motion for summary judgment, in which it did not address or dispute the immunity argument.

---

[1] Appellants also named XYZ LLC, Corporations 1, 2, and 3, as well as Jane Does 1, 2, and 3 as defendants in the lawsuit.

[2] Defendants-Appellees Rankin joined in and adopted the City and Acostas' motions for summary judgment.

{¶13} On April 12, 2012, the trial court issued its decision. The trial court dismissed the City of Circleville, noting that Plaintiffs-Appellants had not disputed the City's argument that it was entitled to immunity. The trial court also found that Plaintiff Susan Allen was at most, a licensee, and there was no evidence that Defendants Acostas/Rankin had intent, purpose, or design to injure Mrs. Allen. The trial court further found that any unevenness in the sidewalk was open and obvious; any imperfection in the sidewalk was two inches or less; and, there was no evidence of attendant circumstances. As such, the trial court granted summary judgment to Defendants Acosta/Rankin as well.

{¶14} The trial court further analyzed the facts under the rule set forth in *Eichorn v. Lustig's Inc.,* 161 Ohio St. 11, 117 N.E.2d 436 (1954), as to the duties of abutting property owners. This analysis necessitated discussion of Circleville City Ordinance 521.06(a) which was not an issue raised by Plaintiffs-Appellants. Instead, the ordinance was discussed in the motion for summary judgment of Defendants/Appellees Acosta/Rankin as an alternative defense.

{¶15} The trial court also dismissed Appellant Roderick Allen's loss of consortium claim.

{¶16} This appeal followed. Appellant's sole assignment of error does not include a challenge to the trial court's application of the doctrine of

sovereign immunity herein which discharged the City of Circleville of liability.

## ASSIGNMENT OF ERROR

I.      "THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANTS/APPELLEES' MOTIONS FOR SUMMARY JUDGMENT ON THE BASIS THAT THE DEFECTIVE SIDEWALK WAS A MINOR DEFECT OF LESS THAN TWO (2) INCHES AND THE THREE (3) OBSTACLES IMPEDING PLAINTIFF/APPELLANT, SUSAN M. ALLEN'S, ACCESS TO THE MAIN AREA OF THE SIDEWALK, PLUS THE SAME COLOR OF CONCRETE, WERE INSUFFICIENT ATTENDANT CIRCUMSTANCES TO RENDER THE DEFECT SUBSTANTIALLY AND UNREASONABLY DANGEROUS."

## LEGAL ANALYSIS

## A. STANDARD OF REVIEW

{¶17} Initially, we note that appellate courts conduct a de novo review of trial court summary judgment decisions. See, e.g., *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241(1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. See *Brown v. Scioto Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); *Morehead v. Conley*, 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786 (1991). Thus, to determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R.56 summary judgment standard, as well as the applicable law.

Civ. R. 56(C) provides, in relevant part, as follows:

* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶18} Pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall*, 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 (1997).

{¶19} Appellee Rankin urges us to summarily affirm the trial court's decision and decline review of this matter due to Appellants' failure to adhere to the requirements of Appellate Rules 12(A)(1)(b) and 16.   App.R. 12(A)(1)(b) provides that on an undismissed appeal from a trial court, a court of appeals shall determine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16, the record on appeal under App.R. 9, and, unless waived, the oral argument under App.R. 21.   Relevant to this discussion is App. R. 16(A)(3), which requires that an appellant include in its brief a statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected. Assignments of error should designate specific rulings which the appellant challenges on appeal.   *North Coast Cookies, Inc. v. Sweet Temptations, Inc.,* 16 Ohio App.3d 342, 476 N.E.2d 388 (8th Dist. 1984), paragraph one of the syllabus.  They may dispute the final judgment itself or other procedural events in the trial court.  *Id.*  The statement of issues should express one or more legal grounds to contest the procedural actions challenged by the assigned errors. *Id.*  See, e.g. *Ellis v. Miller,* 4th Dist. No. 00CA17, 2001-Ohio-2549, 2001 WL 978868, fn 1, explaining the difference between "assignments of error" and "statement of issues" and their relationship to App.R. 16(A)(3).  Appellants' brief reflects a lack of understanding or possible misapplication of the requirements of the appellate

rules. Nevertheless, in the interests of justice, we will address the merits of Appellants' arguments.

## B. NEGLIGENCE

{¶20} Before we address the specific arguments raised by Appellants' assignment of error, we note that Appellants filed their action based on claims of negligence. The trial court's decision found that Appellant Susan Allen was a licensee and therefore owed only the duty on the part of defendants to refrain from willful and wanton conduct. We begin by reviewing the general Ohio law on negligence and premises liability.

{¶21} A successful negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See, e.g., *Texler v. D.O. Summers Cleaners*, 81 Ohio St.3d 677, 680, 693 N.E.2d 217 (1998); *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989); *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). If a defendant points to evidence to illustrate that the plaintiff will be unable to prove any one of the foregoing elements, and if the plaintiff fails to respond as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of law. See *Lang v. Holly Hill Motel,* Inc., 4th Dist. No. 06CA18, 2007-Ohio-

3898,  2007 WL 2191793, at ¶ 19, affirmed, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120.

{¶22} The existence of a defendant's duty is a threshold question in a negligence case. See *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003- Ohio- 2573, 788 N.E.2d 1088, at ¶ 13. In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. See, e.g., *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996); *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994).

{¶23} Ohio law recognizes three distinct classes: trespassers, licensees, and invitees.   *Geog v. Jeffers,* 4th Dist. No. 94CA1613, 1994 WL 704529 (Dec. 9, 1994),*2.  A person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation, is a licensee. *Id*., citing *Provencher v. Ohio Dept. of Transp.* 49, Ohio St. 3d 265, 266 (1990) "* * *[A]s to the duty owing to a license, * * *, it may be generally stated that a licensee takes his license subject to its attendant perils and risks, that the licensor owes him no duty except to refrain from wantonly or willfully injury him, and that he should exercise ordinary care after discovering him to be in peril. * * *" *Hannan v. Ehrlich*,

102 Ohio St. 176, 185-186, 131 N.E. 504 (1921).  See also, *Light v. Ohio University,* 28 Ohio St. 3d 66, 68, 502 N.E.2d 611 (1986).

{¶24} "It is generally held that the occupier of premises, who invites another to enter upon the premises, for some purpose of interest or advantage to such occupier, owes to the person so invited a duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of that invitation. 38 *American Jurisprudence*, 754, Section 96.  The reason for imposing this duty, with respect to invitees and not with respect to licensees or trespassers, is that the invitee is on the premises for a purpose of interest or advantage to the occupier."  *Geog at *2,* citing *Lampe v. Magoulakis,* 159 Ohio St. 72, 111 N.E.2d 7 (1953).  The economic, or tangible benefit test has long been recognized by Ohio courts in order to distinguish the status of an invitee from that of a licensee.  *Id. Provencher,* at 266. The status of a passerby on a public sidewalk is "licensee."  *Greenberg v. Markowitz,* 8th Dist. No. 93838, 2010-Ohio-2228, 2010 WL 2011005, ¶14;  *Gall v. Systems Parking, Inc.,* 8th Dist. No. 66159,  1994 WL 590532, (Oct. 27, 1994).  The duty of care owed to a licensee is to refrain from willful or wanton conduct, which is when a defendant  "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in

which there is a great probability that harm will result* * *." *Hawkins v. Ivy*, 50 Ohio St. 2d 114, 117-118, 363 N.E.2d 367 (1977).

{¶25} In the case at bar, upon reviewing the facts in the record, we agree with the trial court that Appellant Susan Allen was a licensee and thus Appellees Rankin and Acostas owed her no duty, save to refrain from willful or wanton conduct. Appellant testified she was on the public sidewalk outside of the Tuscan Table Restaurant, which was located on land owned by the Acostas. Her purpose was to pass by the area on her way to the Savings Bank, not to enter the restaurant. She was a passerby on a public sidewalk, i.e., a licensee. Rankin and Acostas owed her no duty except to refrain from willfully or wantonly injuring her. In the complaint, Appellants did not allege willful or wanton conduct on the part of Appellees Rankin and Acostas. At depositions, Appellants adduced no evidence which would suggest that Appellees acted willfully or wantonly with regard to their care and/or maintenance of the sidewalk. As such, we affirm the reasoning of the trial court which deemed Appellant a "licensee" and found no liability as to Defendants-Appellees Rankin and Acostas.

{¶26} In addition, we note that Appellant has failed to definitively explain or identify the cause of her fall. In deposition, she admitted that it could have been the metal grate or the concrete sidewalk. "To establish negligence in a slip and fall case, it is incumbent upon the plaintiff to

identify or explain the reason for the fall." *Lang* v. *Holly Hill Motel, Inc.,* 4th

Dist. No. 05CA6, 2005-Ohio-6766, ¶17, quoting *Stamper v. Middletown*

*Hosp. Assn.,* 65 Ohio App.3d 65, 67-68, 582 N.E.2d 1040 (1989) (internal

citations omitted).  In Appellants' brief, "Statement of Facts," she states:

> "Plaintiff/Appellant Susan M. Allen never specifically knew what caused her to fall because of the three (3) circumstances attendant to the upheaval in the sidewalk.  Plus, the concrete was the same color and texture."

 Appellant  admits that she cannot explain or identify the cause of her fall.

According to her deposition testimony she could have fallen on the metal

grate or the concrete sidewalk. In her complaint, she did not allege who

owned the metal grate or the concrete sidewalk.  She brought forth no

testimony or other evidence in the trial court proceedings as to the issue of

ownership of the sidewalk where she fell.   Regardless of an injured party's

status, in order to have a duty to keep premises safe for others one must be in

possession and control of the premises.  *Dysart v. Dysart*, 2nd Dist. No.

2009 CA 24, 2010 Ohio 1238, 2010 WL 1138929, ¶40.  *Wireman v. Keneco*

*Distrib., Inc.,* 75 Ohio St. 3d 103, 108, 661 N.E.2d 744, 1996 Ohio 152,

citing *Wills v. Frank Hoover Supply*, 26 Ohio 3d 186, 497 N.E.2d 1118

(1986).   Summary judgment as to all defendants would have been proper on

this basis alone.  Our analysis could end here, however, we continue to

address the additional arguments raised in Appellants' brief.

## 1. THE "OPEN AND OBVIOUS" DOCTRINE

{¶27} Even if Appellant was a business invitee, as contended, we find no liability on the part of Appellees Rankin and Acostas. A premises owner or occupier possesses the duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that business invitees will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203, 480 N.E.2d 474 (1985). A premises owner or occupier is not, however, an insurer of its invitees' safety. *Id.* While the premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers, see *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359, 390 N.E.2d 810 (1979), invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. See *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 623 N.E.2d 1175 (1993); *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589, (1968) paragraph one of the syllabus.

{¶28} Therefore, when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. See *Armstrong,* at ¶ 5; *Sidle,* paragraph one of the syllabus. By focusing on duty, "the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong* at ¶13.The underlying rationale is that "the open and obvious

nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* at ¶ 5. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.* at ¶ 13. Thus, the open and obvious doctrine obviates the duty to warn and acts as a complete bar to recovery. *Id.* at ¶5. Furthermore, the issue of whether a hazard is open and obvious may be decided as a matter of law when no factual issues are disputed. *Nageotte v. Cafaro Co.,* 160 Ohio App.3d 702, 710, 2005-Ohio 2098, 828 N.E.2d 683, at ¶ 28, citing *Armstrong.*

## 2. "TWO INCH RULE"

{¶29} Addressing the first prong of Appellants' assignment of error, Appellants' contend that the trial court erred by its finding that the defective sidewalk at issue was less than two inches. [3] The "two-inch rule" has been clarified by the Supreme Court of Ohio in *Cash v. Cincinnati*, 66 Ohio St.2d 319, 421 N.E.2d 1275 (1981). In *Cash,* the Supreme Court established that differences in height of two inches or less create a rebuttable presumption

---

[3] Further, Appellants' Statement of Issue No. 1 reads: "Were the facts presented to the trial court regarding the heighth of the defect in controversy, so as not to meet the legal standard required before summary judgment can be granted?"

which may be rebutted by a showing of attendant circumstances sufficient to render the defect substantial. *Cash,* at 323-324. What constitutes attendant circumstances has not been clearly defined; however, the totality of the circumstances of each case must be examined to determine if the circumstances create a substantial defect. *Stockhauser v. Archdiocese of Cincinnati,* 97 Ohio App. 3d 29, 646 N.E.2d 198 (2nd. Dist. 1994) citing *France v. Parliament Park Townhomes*, 2nd. Dist. No. 14264, 1994 WL 151658 (Apr. 27, 1994).

{¶30} In this matter, Appellants presented conflicting evidence in deposition as to the heighth of the raised concrete in the sidewalk. Appellant Susan Allen first testified that the raised portion was "two inches or more." Then she testified "It might have been an inch and three-fourths. I don't know." She further testified "I would say it is an inch and three-fourths or more than two." Appellant Roderick Allen testified in deposition that the concrete was two inches or less where he measured. In his supplementary affidavit, he stated that when he answered "two inches or less" he was referring to the other raised areas of the sidewalk. The trial court found that the imperfection in the concrete were minor, two inches or less.

{¶31} We have said that "[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to

defeat the motion for summary judgment." *Galyean v. Greenwell,* 4th Dist. No. 05CA11, 2007-Ohio-615, 2007 WL 453274, ¶38, quoting *Byrd v. Smith,* 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47 (2006). In this matter, both Appellants submitted affidavits to supplement their testimony. It appears that the trial court disregarded the affidavits or found them not have contained sufficient explanations for the contradiction of both Appellants' deposition testimony, so as to create a genuine issue of material fact. Upon review of the facts and circumstances, we agree with the trial court's finding that the imperfections in the concrete were minor.

### 3. "ATTENDANT CIRCUMSTANCES"

{¶32} The second prong of Appellants' sole assignment of error contends that the trial court erred by its finding that there were insufficient attendant circumstances to render the sidewalk substantially and unreasonably dangerous. "Attendant circumstances" may also create a genuine issue of material fact as to whether a hazard is open and obvious. See *Lang,* 2007-Ohio-3898, at ¶ 24; *Cummin v. Image Mart, Inc.,* 10th Dist. No. 03AP1284, 2004-Ohio-2840, 2004 WL 1220041, at ¶ 8, citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 498, 693 N.E.2d 807 (1st.Dist. 1996). An attendant circumstance is a factor that contributes to the fall and is beyond the injured person's control. See *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 158, 684 N.E.2d 1273(7th Dist.1996). "The

phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." *Cummin at ¶8, citing Cash.* An "attendant circumstance" has also been defined to include "any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." *McGuire,* 118 Ohio App.3d at 499, 693 N.E.2d 807.

{¶33} Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making. See *Id.* at 498, 693 N.E.2d 807. Moreover, an individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger. As the court explained in *Goode v. Mt. Gillion Baptist Church,* 8th Dist. No. 87876, 2006-Ohio-6936, 2006 WL 3804534, at ¶ 25: "The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. The fact that appellant herself was unaware of the hazard is not dispositive of the issue. It is the objective, reasonable person that must find that the danger is not obvious or apparent." Thus, we use an objective standard to determine whether the danger associated with the condition was

open and obvious. Furthermore, the question of whether a danger is open and obvious is highly fact-specific. *Stanfield v. Amvets Post No. 88,* 2nd Dist. No. 06CA35, 2007-Ohio-1896,  2007 WL 1174445, at ¶ 12; *Henry v. Dollar General Store,* 2nd Dist. No.2002CA47, 2006-Ohio-206, 2006 WL 156697, at ¶ 16.

{¶34} Here, Appellant argues that attendant circumstances distracted her as she walked, namely, the street lamp post, the sign post, the tree.  She also asserts the color and texture of the concrete made it difficult for her to see. Taken together, Appellants argue these created attendant circumstances. The trial court found the condition of the concrete to be open and obvious and found no evidence of attendant circumstances.  Again, Appellant's supplementary affidavit directly contradicted her deposition testimony.  Her deposition testimony was clear that she had no distractions as she walked. She never mentioned the color or texture of the concrete. Her affidavit, however, explicitly described the street lamp, sign post, and tree as distracting her at various intervals as she walked.  Again, the trial court apparently did not find her explanation of the discrepancy in testimony to be sufficient so as to create a genuine issue of material fact.  Upon review of the facts and circumstances, we affirm the finding of the trial court that there was no evidence of attendant circumstances.

## C. *EICHORN* ANALYSIS

{¶35} Having affirmed the trial court's previous findings, it would be sufficient to end our analysis as to the liability of Appellees Rankin and Acosta at this juncture. However, in its decision, the trial court analyzed the facts and circumstances herein in conjunction with the law set forth in *Eichorn v. Lustig's Inc.*, 161 Ohio St. 11, 117 N.E.2d 436 (1954). And, although not directly set forth as an assignment of error, Appellants' Statement of Issue No. 2 states: "When is it appropriate to grant summary judgment in favor of a Defendant in a defective sidewalk case when considering the application of one of the exceptions to the general rule"? Given the arguments made in Appellant's memoranda contra the various motions for summary judgment and the trial court's analysis under *Eichorn,* we construe this as a challenge to the trial court's decision applying the law in *Eichorn.*

{¶36} Normally, the owner of property that abuts a public sidewalk is not liable for injuries sustained by pedestrians using the sidewalk because the duty to keep streets, including sidewalks, in repair rests upon municipalities and not upon the abutting owners. *Morgan v. Gracely,* 4th Dist. No. 05CA36, 2006-Ohio-2344, 2006 WL 1304858, ¶9; *Eichorn.* However, there are three exceptions to this rule:

First, an abutting landowner will be liable for a
pedestrian's injuries if a statute or ordinance imposes upon him
a specific duty to keep a sidewalk adjoining his property in
good repair. *Crowe v. Hoffmann,* 13 Ohio App.3d 254,255, 468
N.E.2d 1120, 1122(1983). Second, the landowner will be liable
if his affirmative acts created or negligently maintained the
defective or dangerous condition causing the injury. *Id.*, citing
*Eichorn,* supra. Third, the landowner will be liable if he
negligently permitted the defective or dangerous condition to
exist \*\*\*for some private use or benefit. *Id.*

{¶37} Appellants' Issue No. 4 also reads: "When does a municipal

ordinance create a specific mandatory duty?" We construe Appellants as

making the argument here, that Appellees Rankin and Acostas are liable for

Appellant Susan Allen's injuries by virtue of the first exception to the

*Eichorn* rule. Appellants' contend on appeal that the City of Circleville,

Codified Ordinance 521.06(a) imposes upon Appellees Rankin and Acostas

a specific duty to keep the sidewalk where Susan Allen fell in good repair.

The ordinance reads as follows:

(a) No owner or occupant of abutting lands shall fail to
keep the sidewalks, curbs or gutters in repair and free from
snow, ice, or any nuisance. On any claim presented for bodily
or property damage on the sidewalks, curbs or gutters, the
adjoining or abutting property owner shall be held liable in tort
for such damages to another. Alternatively, should the City of
Circleville be called upon to make such payment to a third-
party, the City will look to the adjoining or abutting landowner
for contribution and indemnity.
(b) Whoever violates this section is guilty of a minor
misdemeanor.

**{¶38}** In the case at bar, the trial court noted that Appellants never asserted in its complaint violation of the above city ordinance as a basis for liability. In discovery, Appellants never produced evidence that Appellees Rankin and Acostas violated the city ordinance. The ordinance was brought to light only as an alternative basis for defense in Appellees' Acostas' motion for summary judgment. When the ordinance was cited, Plaintiffs-Appellants only response was:

> "The City Ordinance 521-06(a) puts the liability on the property owner for any injuries to pedestrians. Defendants-Acostas have set forth the entirety of Ordinance 521-06(a). It is respectfully submitted that Legislative laws supersede common law."

At no time did Appellants move to amend their complaint to assert this claim. At no time did Appellants further develop an argument with regard to the city ordinance when the theory was raised in motion practice. Appellants did not raise the issue of the ordinance in the trial court and they cannot now raise the issue. *Sekora v. General Motors Corp.,* 61 Ohio App.3d 105, 112-113, 572 N.E.2d 184, (11th Dist. 1989). Appellants have waived any error with regard to the application of the city ordinance at the trial court level. *Id.* See also, *Kalish v. Trans World Airlines,* 50 Ohio St.2d 73, 362 N.E.2d 994 (1977).

## D.  SOVEREIGN IMMUNITY

{¶39} Finally, we note Appellants' sole assignment of error does not dispute the grant of summary judgment to the City of Circleville, based on the doctrine of sovereign immunity.  We further note that Appellants' "Statement of Issues Presented for Review" does not specify the immunity statute, R.C. 2744.02, but lists as Issue No. 3: "When should a statute be held to be unconstitutional and, therefore, inapplicable?"  We construe this as a challenge to the immunity statute and the grant of summary judgment to the City of Circleville on this basis.  Therefore, for clarification and in the interests of justice, we will briefly address the application of the doctrine of sovereign immunity herein and the constitutionality of the immunity statute.

{¶40} R.C. Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability. *Martin v. Ironton,* 4th Dist. No.07CA37, 2008-Ohio-2842, 2008 WL 2381737, ¶9.  See *Cramer v. Auglaize Acres,* 113 Ohio St.2d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, at ¶14; *Cater v. Cleveland,* 83 Ohio St. 3d 24, 28, 697 N.E.2d 610 (1998).  First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions.  See *Cramer*; *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790

N.E.2d 781, at¶7.   Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See *Cramer*; *Ryll v. Columbus Fireworks Display Co.,* 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, at ¶25.   Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability. See *Cramer*; *Colbert* at ¶9. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law.  See, e.g., *Conley v. Shearer*, 64 Ohio St. 3d 284, 292, 595 N.E.2d 862 (1992); *Murray v. Chillicothe,* 164 Ohio App.3d 294, 2005-Ohio-5864, 842 N.E.2d 95, at ¶11 (4th Dist.).

{¶41} To the extent that Appellants' brief challenges the grant of summary judgment to Defendant- Appellant City of Circleville based on sovereign immunity, which it did not dispute at the trial court level, and now contends that the immunity statute is unconstitutional, we disagree.  The trial court found that the facts of this case do not qualify so as to invoke any of the exceptions to immunity as defined in R.C. 2744.02(B).   We agree. Furthermore, it is well-settled that the sovereign immunity statute is constitutional.  In *O'Toole v. Denihan,* 118 Ohio St. 3d 374, 2008-Ohio-2574, 889 N.E.2d 505 (2008), at ¶95, the Supreme Court of Ohio stated:  "In reviewing our precedent and that of numerous appellate courts, we conclude that this issue is one that is settled and need not be discussed any further in

this case." Cf. *Fahnbulleh v. Strahan,* 73 Ohio St. 3d 666, 653 N.E.2d 1186 (1995); *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St. 3d 351, 639 N.E.2d 31, (1994); *Bundy v. Five Rivers Metroparks,* 152 Ohio App. 3d 426, 2003-Ohio-1766, 787 N.E.2d 1279, ¶45-47. See, more recently, *Fitzgerald v. Cuyahoga,* 8th Dist. No. 97772, 2012-Ohio-2638, 2012 WL 2150896, at¶6. Therefore, we affirm the decision of the trial court granting summary judgment to the City of Circleville on this basis.

## E. LOSS OF CONSORTIUM

{¶42} A claim for loss of consortium is derivative in that the claim is dependent upon the defendant having committed a legally cognizable tort upon the spouse who suffers bodily injury. *Bowen v. Kil-Kare, Inc.,* 63 Ohio St. 3d 84, 88 585 N.E.2d 384 (1992). While a spouse's claim for loss of consortium is separate and distinct, the non-injured spouse cannot recover for loss of consortium is there is no cognizable claim under Ohio law that would be available to the injured spouse. *LeMaster v. Davis,* 4th Dist. No. 95CA30, 1996 WL 174627 (Apr.10, 1996); See also, *Gallimore v. Children's Hosp.,* 67 Ohio St.3d 244, 617 N.E.2d 1052 (1993). When the trial court granted summary judgment to the defendants and effectively dismissed all claims of Plaintiff Susan M. Allen, the trial court also correctly ruled that Appellant Roderick Allen's loss of consortium claim should be dismissed.

CONCLUSION

{¶43} Upon our de novo review of the facts and circumstances, we find that there were no genuine issues of material fact and all defendants were entitled to summary judgment as a matter of law.  For the foregoing reasons, we overrule Appellants' assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J., and Kline, J.:  Concur in Judgment and Opinion.


For the Court,

BY:  _____
Matthew W. McFarland
Presiding Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**